UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * *
                              *
WILLIAM FOLEY,                *          Civil Action No.
          Plaintiff,          *          04-12126 EFH
                              *
v.                            *
                              *
ALCATEL USA, INC.,            *
          Defendant,          *
                              *
* * * * * * * * * * * * * * * * * * *
```

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS**

The Plaintiff, William Foley (hereinafter, the "Plaintiff"), has moved to compel the

Defendant, Alcatel USA, Inc. (hereinafter, the "Defendant") to produce documents responsive to

his First Request for Production of Documents numbered 1-43. For the reasons set forth below,

Plaintiff requests that his Motion be allowed.

**I. FACTUAL BACKGROUND**

The instant matter arises out of the Defendant's refusal to provide severance benefits to

the Plaintiff, a participant of an employee welfare benefit plan, under the Defendant's

"Severance Benefits Plan" (hereinafter, the "Plan") in violation of Section 502(a)(1)(B) of the

Employee Retirement Income Security Act (hereinafter, "ERISA"), 29 U.S.C. §1132(a)(1)(B).

In or about September 2000, Plaintiff began working at Astral Point Communications,

Inc. (hereinafter, "APC") in the capacity of Sales Director. On or about April 3, 2002, APC was

acquired by the Defendant. From the date of Defendant's acquisition of APC until May 21, 2002

(the date Plaintiff received notice of his termination), Plaintiff was not informed of any change in

his employment status nor was he informed that his position, as Sales Director, had been subject to reclassification.

Under the terms of the Plan, a participant with a "job level of Director" was entitled to a minimum severance payment equal to twenty-six (26) weeks' pay. *See* Compl., Exh. A, Art. 4, §4.2 at 7-8. The Plan did not define the term "job level of Director." The Plan also provided that, the Plan Administrator or its designee, the "Appeals Committee," was granted "the responsibility and discretion to interpret and enforce all Plan provisions in their sole and absolute discretion." *See* Compl., Exh. A, Art. 5, §5.1 at 10. However, the Plan further provided that "any exercise of discretion by the Plan Administrator or Appeals Committee must be exercised in a uniform and nondiscriminatory manner." *See* Compl., Exh. A, at S-3.

On or about May 21, 2002, Plaintiff received, among other documents, a Severance Statement, informing him that he was eligible to receive only 1.5 weeks of severance pay, despite his position of Sales Director. Subsequently, the Defendant refused to provide Plaintiff with severance benefits equaling twenty-six (26) weeks of pay. The Plaintiff has alleged that the Plan Administrator did not apply the terms of the Plan in a "uniform and nondiscriminatory manner" in that at least two other former APC employees, Fred Parenteau (hereinafter, "Parenteau") and Dan Micelli (hereinafter, "Micelli"), whose job duties and responsibilities were identical to those of Plaintiff, received severance benefits under the Plan equal to twenty-six (26) weeks of their regular base pay.

In response, the Defendant contends that Plaintiff was denied severance benefits because he was not a "Director" (although it concedes that he was a "Sales Director") but rather an "exempt individual contributor" – terms undefined under the Plan. The Defendant additionally

2

has asserted that he was not eligible for benefits because he did not work in a management position.

## II. DISCOVERY

On March 17, 2005, the parties submitted their Joint Statement to the Court for the Scheduling Conference. On April 22, 2005, in accordance with the Joint Statement, Plaintiff provided his Rule 26(a)(1)-(2) Disclosures along with a production of identified documents to the Defendant.

On April 22, 2005, the Defendant provided to Plaintiff its "Initial Disclosure" that, for the first time, indicated that "documents will not be produced until both parties execute a confidentiality agreement." *See* Defendant's Initial Disclosures, Part B, at 4. No proposed confidentiality agreement was provided with the "Initial Disclosures". During the required discussions for the preparation of the Joint Statement, there were no discussions relating to a confidentiality agreement.

On May 23, 2005, Plaintiff served his First Request for Production of Documents. *See* Exhibit A. On or about May 27, 2005, Defendant forwarded to Plaintiff a "Stipulated Protective Order." *See* Proposed Stipulated Protective Order, (hereinafter, the "Protective Order"), Exhibit B. On June 27, 2005, Defendant responded to Plaintiff's First Request for Production of Documents. *See* Exhibit C. Defendant has objected to each and every request for production and interrogatory propounded by the Plaintiff and has produced no documents.[1] The Defendant has not filed a Motion for a Protective Order.

---

[1] The Defendant has refused to produce any documents, even those that involve only the Plaintiff and the decisions made by the Plan Administrator and Appeals Committee.

## III. LOCAL RULE 7.1(a)(2) and 37.1(b)(2) CERTIFICATION

On July 7, 2005, at approximately 3:00 p.m., Counsel for the Plaintiff, John D. Burke,

conferred with counsel for the Defendant, T. Christopher Donnelly, Esq., via telephone,

concerning the subject matter of the Defendant's proposed "Protective Order" and the

Defendant's responses to Plaintiff's Requests for Production of Documents. The discussion

lasted approximately seven (7) minutes.

In the discussion, the parties were unable to agree as to the terms of the Protective Order -

- namely paragraph 5. Section 5 of the disputed Protective Order provides,

> In addition to the foregoing protections, a Producing Party may designate and stamp a
> document or other discovery material as Attorney's-Eyes-Only-Confidential if it contains
> (a) a trade secret; (b) highly sensitive personal information; (c) highly sensitive
> commercial or financial information which, if disclosed, might prejudice the business of
> the Producing Party, including without limitation its employees or customers. Attorney's-
> Eyes-Only-Confidential materials may only be shown or divulged only to counsel in this
> Action and employees of their firms assisting such counsel. If counsel wishes to disclose
> Attorney's-Eyes-Only-Confidential material to a party, a witness at deposition or to the
> Court, the parties will negotiate the terms and conditions under which such disclosure
> may be made; if unable to so agree, the parties will submit the dispute to the Court for
> resolution, without disclosing in the process the Attorney's-Eyes-Only-Confidential
> material.

The reasons for the unacceptability of paragraph 5 of the "Protective Order" were also discussed.

*See* Exhibit D.[2] Counsel for the Defendant indicated an insistence by his client on the inclusion

of paragraph 5 and indicated, as he had in the past, that no documents would be released unless

the Protective Order was executed. *See* Exhibits D-I.

In an effort to resolve the issue, on or about June 13, 2005, counsel for the Plaintiff

requested that the Defendant identify the specific types of documents or areas of concern that it

considered highly sensitive and confidential. *See* Exhibit I. Counsel for the Defendant indicated

---

[2] Prior to then, the parties had engaged in other discussions in an attempt to resolve the issue. *See* Exhibits D-I.

4

that the personnel files of those employees who were treated differently than Plaintiff (Request No. 29) and other former employees of the Defendant should not be accessed by the Plaintiff (Request Nos. 15, 20-22, 38 & 39). As set forth above, this matter concerns the allegation that the Plan Administrator did not apply the terms of the Plan in a "uniform and nondiscriminatory manner" in that at least two other former employees, Parenteau and Micelli, received severance benefits as "Directors" under the Plan. Further, in response to Defendant's position, counsel for the Plaintiff proposed that, with regard to information concerning other employees that were treated differently than Plaintiff, no medical information, disciplinary action or information related to their private lives be produced. *See* Exhibit I. Work related information is fair game in a discrimination case. Indeed, these employees' positions, receipt of severance, job duties and functions, managerial responsibilities, job classifications, pay levels, and management structure are all central to Plaintiff's claims of discrimination.[3] Nevertheless, Defendant declines to remove or otherwise limit paragraph 5 of the Protective Order. Defendant has made no other showing, whatsoever, that any other documents sought by Plaintiff should be placed in such a restricted category.

The parties have been unable to agree as to the terms of the Protective Order based on this language and, as a result, the Defendant will produce no documents to the Plaintiff until the Protective Order is executed.[4] As such, the parties have conferred and have attempted to resolve and narrow the issues presented by the Motion to Compel.

---

[3] Defendant has suggested that pay levels reflect management responsibilities, and, as such, that information should be disclosed.

[4] Prior to July 7th, the parties had agreed that paragraph 2, page 3, sentence 1, of the Protective Order would be amended to add "witnesses and deponents" following the words "assisting such counsel"… *See* Exhibits F&H.

## IV. ARGUMENT

### *A.    Defendant's Protective Order, Paragraph 5, Should Be Stricken.*

There are several reasons why the Protective Order is objectionable to the Plaintiff. First, as set forth below, the majority of the Requests seek information which do not, in any way, implicate trade secrets, highly sensitive personal information, highly sensitive commercial or financial information which, if disclosed, might prejudice the business of the Defendant. The instant matter involves the denial of severance benefits under an ERISA plan. For example, the Defendant refuses to produce even Plaintiff's personnel file (Request Nos. 12 & 17), documents relied upon by its employees, Plan Administrator and Appeals Committee in making the decision to deny severance to the Plaintiff (Request Nos. 1-6, 13 & 16) and position descriptions for the positions of "Sales Director" or "Account Director" (Request Nos. 8-11). Defendant similarly refuses to produce documents defining the terms upon which it relied to deny severance benefits to the Plaintiff such as "director", "job level system", "internal job classification system", "job levels", "exempt individual contributor" and "individual contributor" (Request Nos. 18, 27, 30, 31) or even documents related to its management structure (Request Nos. 42 & 43).

Second, paragraph 5 prohibits counsel from showing the documents to his client. Such a restriction is intended to interfere with counsel for the Plaintiff's ability to review relevant documents with the Plaintiff. Indeed, the provision goes so far as to require that if counsel wishes to disclose such documents to a party, a witness at deposition or to the Court, the parties must negotiate the terms and conditions under which such disclosure may be made. In effect, counsel will be required to disclose work product and strategy to the Defendant in advance of its use. The implications of such a process is absurd. It will provide notice to parties and/or

6

witnesses as to the use of the documents in advance of their testimony at deposition. Further, for each such instance Plaintiff will be required to negotiate undefined "terms and conditions" with the Defendant. Clearly, the Defendant could, at a whim, further frustrate the discovery process by withholding its consent. Indeed, the Defendant prohibits even Court review of the document in the event of a dispute. These terms are well beyond what is permitted by the Federal Rules of Civil Procedure and will serve no purpose beyond grossly expanding the cost of litigation and requiring constant Court involvement.

Third, the Defendant is adequately protected by other provisions of the Protective Order that have been agreed to by the Plaintiff. In this regard, the protective order, paragraph 1, provides that information disclosed "shall be used by the Discovering Party only for the purpose of this captioned action ("Action") and for no other purpose." Further, as agreed by the parties, in paragraph 7, at the conclusion of the litigation, all documents are to be returned or destroyed. The Defendant has absolutely no basis for concluding that the Plaintiff will disclose any so-called information outside the bounds of this litigation. Similar restraints, absent a overbroad "attorney's-eyes-only" provision have been found appropriate by the Courts. *See Cobb v. The Rockefeller University*, 1991 U.S. Dist. Lexis 15278 (S.D.N.Y. 1991)("there is simply no reason to believe that plaintiff would not comply with a court order precluding her from disclosing the contents of the personnel files except for the limited purpose of this litigation."); *Mitchell v. Fishbein*, 227 F.R.D. 239, 253 (S.D.N.Y. 2005).

In sum, the Protective Order is sufficient without paragraph 5 and provides adequate protection to the Defendant. For these reasons, the Plaintiff respectfully requests that the Court deny Defendant's Protective Order to the extent that it contains paragraph 5 and order the Defendants to produce those documents identified in Defendant's Rule 26 "Initial Disclosures"

and those documents responsive to Plaintiff's First Request for Production of Documents as set forth below.

### B.    The Plaintiff's Requests for Production of Documents

#### i.  Plaintiff's Request Nos. 1-14, 16-18, 25, 27, 30-33, 35, 42 & 43 Seek Clearly Discoverable Documents.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." This provision has been interpreted to entitle parties to discovery of any matter that bears on any issue in the case in the absence of privilege. *Santiago v. Fenton*, 891 F.2d , 379 (1st Cir. 1989). Thus, as a general matter, parties are entitled to broad discovery. The broad scope of the discovery rules reflects a policy that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

ERISA, in turn, requires that, "in accordance with regulations of the Secretary [of Labor]," every employee benefit plan must provide participants whose benefits claims were denied with a "full and fair review" of the denial. 29 U.S.C. §1133 (2003). The Department of Labor (hereinafter, the "DOL") has promulgated regulations interpreting "full and fair review" to require that claimants be given access to all "relevant" documents. 29 U.S.C. §2560.503-1(h)(2)(iii). The regulations make clear that, "the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own processes for ensuring appropriate decisionmaking and consistency." 66 Fed. Reg. 70.246, 70.252 (Nov. 21, 2000). Under the regulations, 29 U.S.C. §2560.503-1(m)(8)(i)-(iii), "a

8

document, record, or other information shall be considered 'relevant' to a claimant's claim if

such document, record, or other information:

(i)     Was relied upon in making the benefit determination;

(ii)    Was submitted, considered, or generated in the course of making
        the benefit determination, without regard to whether such document,
        record, or other information was relied upon in making the benefit
        determination;

(iii)   Demonstrates compliance with the administrative processes and
        safeguards required pursuant to paragraph (b)(5) of this section in
        making the benefit determination; …"[5]

Against this back-drop, Plaintiff's Request for Production of Documents are clearly

controlled by the DOL regulations, involve no aspect of the Defendant's Protective Order and

are clearly relevant to the matter before the Court as set forth below:

**REQUEST NO.1:** All correspondence, notes, memoranda or other documents relating
in any way to discussions between Plaintiff and Defendant regarding Plaintiff's requests for
severance benefits under the Plan.

**Response No. 1**: Alcatel objects to this Request for the reasons stated in the General
Objections.[6] Alcatel objects to this Request on the grounds that, insofar as it uses the words
"relating in any way to," it is vague, ambiguous, and does not describe with reasonable
particularity the requested documents. Alcatel further objects to this Request for the reason that it
seeks production of documents that are already in Plaintiff's possession or are equally available
to Plaintiff.

ARGUMENT: The Request simply seeks documents related to the discussions between

the Plaintiff and Defendant concerning his requests for severance benefits under the Plan.

Indeed, there were several telephone conversations between the Plaintiff and members of

---

[5]Pursuant to 29 U.S.C. §2560.503-1(b)(5), a plan's claims procedure must contain administrative processes and
safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing
plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to
similarly situated claimants.

[6]In addition to its Responses, the Defendant provided seven (7) separate "general objections" to each Request.
Defendant's general objections are contained in Exhibit C at 1-2.

Defendant's Human Resources Department such as Julie Liptak, Vice President, Human

Resources, who were involved in making the decision to deny Plaintiff benefits under the Plan.

Clearly, these documents, such as correspondence, notes, memoranda or other documents

reflecting these discussions are relevant to his claim for the recovery of benefits under the Plan.

**REQUEST NO. 2:** All documents, including notes, memoranda and correspondence prepared
or written by the Plan Administrator and/or the Alcatel USA, Inc. Administration Committee
concerning the Plaintiff.

   **Response No. 2**: Alcatel objects to this Request for the reasons stated in the General
Objections.

   ARGUMENT: The Request plainly seeks documents prepared by the Plan Administrator

and/or the Alcatel USA, Inc. Administration Committee concerning the Plaintiff. The requested

documents are clearly the types of documents required for a full and fair review under the DOL

regulations. Furthermore, in addition to the requirements of the DOL regulations, the Plaintiff is

entitled to discovery relating to the decisions made by the Plan Administrator and Appeals

Committee given the fact that both disregard the terms of the Plan and invoke and apply

definitions to the Plan that are not contained within the Plan. Clearly, these documents may lead

to the discovery of admissible evidence.

**REQUEST NO.3:** Any and all written statements and/or reports, signed or unsigned, of the
Plaintiff or Defendant's employees concerning the subject of Plaintiff's Complaint.

   **Response No. 3**: Alcatel objects to this Request for the reasons stated in the General
Objections. Alcatel also objects to this Request on the grounds that it seeks documents protected
from disclosure by the attorney-client privilege and work-product doctrine.

   ARGUMENT: Any statements of the Defendant's employees or the Plaintiff

concerning the subject matter of the Complaint are relevant to Plaintiff's claims. Plaintiff is not

seeking statements obtained by Defendant's attorneys. In addition, as with the majority of the

Requests made by Plaintiff, this Request clearly falls within the DOL regulations to the extent

that any such information "was relied upon in making the benefit determination" or "was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination."

**REQUEST NO.4:** All documents considered or relied upon by Julie Liptak, Vice President, Human Resources, in making her decision of June 25, 2002 concerning the Plaintiff.

**Response No. 4**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: On June 25, 2002, Julie Liptak, Defendant's Vice President of Human Resources denied Plaintiff's claim for severance benefits under the Plan. *See* Compl., Exh. C. In this regard, Liptak, informed Plaintiff that he was not entitled to benefits because he was an "exempt individual contributor" – a term neither referenced nor contained within the Plan. Clearly, the documents relied upon by Liptak in making her determination and their sources are relevant to the application of the Plan to the Plaintiff under the DOL regulations.

**REQUEST NO.5:** All documents considered or relied upon by the Plan Administrator in making his decision of August 9, 2002 concerning the Plaintiff.

**Response No. 5**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: On August 9, 2002, Toby Todd (hereinafter, "Todd"), Defendant's Director of Corporate Benefits, acting as the Plan Administrator, further denied Plaintiff's claim for severance benefits under the Plan. *See* Compl., Exh. E. In this regard, Todd informed Plaintiff that he was not a "Director" under the Plan (despite being titled a "Sales Director") but rather an "exempt individual contributor" – a term neither referenced nor contained within the Plan. Clearly, the documents relied upon by the Plan Administrator in making his decision and their sources are relevant to the application of the Plan to the Plaintiff.

11

**REQUEST NO.6:** All documents considered or relied upon by the Alcatel USA, Inc. Administration Committee in making its decision of December 23, 2002 concerning the Plaintiff.

**Response No. 6**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: On December 23, 2002, Brenda Mills, on behalf of the Defendant's Administration Committee, further denied Plaintiff's claim for severance benefits under the Plan. *See* Compl., Exh. G. In this regard, Mills informed Plaintiff that he was not a "Director" under the Plan (despite being titled a "Sales Director") but rather an "exempt individual contributor". In addition, Mills informed Plaintiff that, "employees with job positions and titled similar to you have been treated the same way..." Importantly, Mills noted that an investigation was conducted and that two (2) other employees (Parenteau and Micelli) that Plaintiff alleged were treated differently than him were entitled to benefits under the Plan while he was not. Clearly, the documents relied upon by the Administration Committee in making its decision concerning the denial of benefits and the investigation conducted into Plaintiff's claims of discriminatory treatment are at the heart of his ERISA claims and must be produced under the DOL regulations.

**REQUEST NO.7:** All records, statements and/or notes containing or concerning statements taken from or given by any witness to the incidents described in the Complaint.

**Response No. 7**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel also objects to this Request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege and work-product doctrine.

ARGUMENT: Plaintiff is entitled to witness statements taken from any employee or former employee of the Defendant to the extent that the statements were submitted, considered, or generated in the course of making the benefit determination in accordance with the DOL regulations. Plaintiff is not seeking statements taken by the Defendant's attorneys in this matter.

**REQUEST NO.8:** The position description for the position of "Sales Director" in effect on or after January 1, 2002 at Astral Point Communications, Inc.

12

**Response No. 8**:  Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT:  In or about April 2002, Defendant acquired Plaintiff's employer, APC. Upon information and belief, the Defendant, through the acquisition, acquired all of the APC documentation related to job titles and responsibilities.  The Defendant has repeatedly relied on job titles and functions, including those titles and functions while Plaintiff was employed at APC, to defend its actions in denying Plaintiff severance benefits.  As such, the Plaintiff's request for his position description at APC is relevant to the Defendant's defenses and in interpreting the Plan.

**REQUEST NO.9:**  The Defendant's position description for the position of "Sales Director" in effect on or after January 1, 2002.

**Response No. 9**:  Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT:  This Request, like Request No. 8, seeks the Defendant's position description for Plaintiff's position.  As stated, the Defendant has relied on job titles and functions, including those titles and functions while Plaintiff was employed at Defendant, to justify its denial of severance benefits to Plaintiff.  As such, the Plaintiff's request for his position description while at the Defendant is relevant to the Defendant's defense to this matter.

**REQUEST NO.10:**  The Defendant's position description for the position of "Account Director" in effect on or after January 1, 2002.

**Response No. 10**:  Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT:  On or about the day of his layoff, Defendant provided Plaintiff a "Severance Statement" that identified him, for the first time, as holding the position of "Account Director."  S*ee* Compl., Exh. B.  At no time prior to then had Plaintiff been informed that there

13

had been a change to his title. As such, the position description relating to the position relied

upon by Defendant to justify denying Plaintiff severance must be produced.

**REQUEST NO.11:** The position description for the position of "Account Director" in effect on or after January 1, 2002 at Astral Point Communications, Inc.

**Response No. 11**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: *See* Argument to Response No. 10.

**REQUEST NO.12:** Plaintiff's employment and/or personnel file.

**Response No. 12**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: Plaintiff seeks his own employment/personnel file from the Defendant.

There are no grounds for failing to produce the document. Pursuant to Massachusetts General

Laws Chapter 149, Section 52C, an employee is entitled to a copy of his/her file. The fact that

Defendant will produce no documents, even those that wholly relate to Plaintiff and his claims

demonstrates its tactic to obstruct Plaintiff's ability to obtain discovery.

**REQUEST NO. 13:** All e-mails by and between any employee(s) or agent(s) of the Defendant relating to the decisions to deny Plaintiff severance benefits under the Plan including but not limited to the following employees or agents: (a) Karin Matasic; (b) Pat Vogeler; (c) Brenda Mills; (d) Megan Donovan; (e) Bill King; (f) Henry Wasik; (g) Wayne Cole; (h) Toby Todd; (i) Julie Liptak; and (j) Jim Lang.

**Response No. 13**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel further objects to this Request for the reason that it seeks production of duplicative documents.

ARGUMENT: Each of the individuals identified above are believed to be involved in the

decision to deny Plaintiff severance benefits under the Plan. Indeed, the Request specifically

seeks e-mails by and between these individuals as they relate to the decision to deny Plaintiff

benefits under the Plan and are discoverable under the DOL regulations. Clearly,

14

communications evidencing the decision making process and the information upon which

Plaintiff's claim was denied is directly related to his claim in this matter.

**REQUEST NO.14:** All Defendant's personnel policies, to include any revisions, in effect at the time of Plaintiff's layoff.

**Response No. 14**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence, it is over broad, and compliance would impose an undue and unreasonable burden on Alcatel.

ARGUMENT: It is common that corporate personnel policies make reference to ERISA

plans and plan terms. As stated, the Defendant repeatedly relies on its claim that Plaintiff was

not a Sales Director but rather an "exempt individual contributor". Such terms, including titles

and positions related to Plaintiff's asserted discriminatory treatment would commonly be

contained within corporate personnel policies. In addition, given the fact that the Defendant has

interpreted the Plan using terms that are absent from the Plan, Plaintiff should be provided access

to the source of this information.

**REQUEST NO.16:** All documents, including but not limited to, memoranda, notes, drafts, correspondence and e-mails exchanged between Plaintiff and any employee of Defendant concerning the claims articulated in the Complaint.

**Response No. 16**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel further objects to this Request for the reason that it seeks production of documents that are already in Plaintiffs possession or are equally available to Plaintiff. Alcatel objects to this Request on the grounds that it is vague, ambiguous, and does not describe with reasonable particularity the requested documents.

ARGUMENT: *See* Argument to Response No. 13.

**REQUEST NO.17:** All records maintained by Defendant's Human Resources department concerning Plaintiff.

**Response No. 17**: *See* Defendant's identical Response to Request No. 14, above.

15

ARGUMENT: Plaintiff seeks information related to his employment held by the

Defendant's Human Resources Department. The requested information would also include APC

information. In defense of this lawsuit, the Defendant has claimed that Plaintiff was not a

Director, but rather an exempt individual contributor, and, therefore, was not entitled to

Director's severance pay under the Plan. Plaintiff was a Sales Director. Indeed, Julie Liptak,

Defendant's Vice-President of Human Resources made the initial denial of Plaintiff's claim. *See*

Compl., Exh. C. Information contained in the files of the Defendants Human Resources

Department may clearly lead to the discovery of admissible evidence in that Defendant may

possess documents demonstrating the Plaintiff's title and responsibilities. *See also*, Argument to

Response No. 12.

**REQUEST NO.18:** The Defendant's "Job Level System" and/or "internal job classification system" referred to in the Alcatel USA, Inc. Administration Committee decision of December 23, 2002 by Brenda Mills.

**Response No. 18**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it is vague, ambiguous, and does not describe with reasonable particularity the requested documents. Without limiting the breadth of its foregoing objections, Alcatel notes that a "system" is not a document or thing subject to Rule 34 production.

ARGUMENT: On December 23, 2002, Brenda Mills, On Behalf of the Alcatel USA,

Inc. Administration Committee, repeatedly referred to the Defendant's "Job Level System" and

referenced its "internal job classification system" as a basis for rejecting Plaintiff's claim for

severance benefits. *See* Compl., Exh.G. The Request relates to direct statements made by the

individual making the determination in this matter. According to the Administration Committee,

the Plan is based on the "Job Level System" and that "[u]nder the Job Level System, the fact that

your job title contained the term "Director" is not determinative of your job status as director;

rather, that determination is made based on the compensation and job responsibilities for that

16

position as set forth by the Job Level System." The Administration Committee also stated that, "[w]hether a job that contains the term "Director" is that of an individual contributor rather than a manager *is identified in the Job Level System...*" *See* Compl., Exh. G (emphasis added). Defendant now contends that its "system" through which it rejected Plaintiff's claim for benefits is not a document or thing subject to discovery. Clearly, based upon a simple review of the Administration Committee decision, the Defendant is in possession of a document as demonstrated by the Administration Committee's words "as set forth by the Job Level System" and "identified in the Job Level System." Plaintiff is clearly entitled to this information under the DOL regulations.

**REQUEST NO.25:** All witness statements.

> **Response No. 25**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege and work-product doctrine.

ARGUMENT: Plaintiff has requested the production of witness statements. He is not seeking statements taken by the Defendant's attorneys but rather other statements taken by employees of the Defendant prior to the initiation of this litigation. In this regard, the Administrative Committee, in reviewing Plaintiff's appeal indicated that it investigated Plaintiff's claim that the Plan Administrator had acted in a discriminatory manner by granting Directors severance benefits to Parenteau and Micelli. *See* Compl., Exh. G. The Defendant rejected Plaintiff's claim of discrimination. To the extent that the Defendant is in possession of witness statements relating to this investigation or other statements related to Plaintiff's claims for benefits, they must be produced as part of the underlying decision of Administration Committee.

17

**REQUEST NO.27:** All documents defining the term "exempt individual contributor" and/or "individual contributor" within the Defendant in effect on May 21, 2002 and any subsequent revisions.

**Response No. 27:** Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence, it is over broad, and compliance would impose an undue and unreasonable burden on Alcatel.

ARGUMENT: In its August 9, 2002 and December 23, 2002 decisions of the Plan

Administrator and Administration Committee, both repeatedly referred to the Plaintiff as an

"exempt individual contributor" or "individual contributor" as the basis for rejecting his claim

for severance benefits under the Plan. *See* Compl., Exhs. E & G. Neither term is contained

within the Plan. Clearly, the documents considered by the Plan Administrator and

Administration Committee to reject Plaintiff's requests for severance benefits under the Plan are

discoverable.

**REQUEST NO.30:** Each and every document defining the term "Director" within the Defendant in effect on May 21, 2002 and any revisions.

**Response No. 30:** Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel further objects to this Request for the reason that it requests production of duplicative documents.

ARGUMENT: The Plan's express language required that severance benefits be provided

to employees with the "job level of Director". *See* Compl., Exh. A at 8 (Article 4, §4.2). The

"job level of Director" language, like much of the terms used to deny Plaintiff severance

benefits, was undefined in the Plan. As such, the definition of "Director" applied to Plaintiff by

the Plan Administrator and Administration Committee is relevant to the reasons for the denial of

Plaintiff's claim. Moreover, documents defining the word "Director" within the Defendant are

clearly relevant given the absence of a definition in the Plan. In addition, since no documents

18

have been produced, Defendant's claim that the production involves duplicative documents is

disingenuous.

**REQUEST NO.31:** Each and every document defining the term "job levels" within the
Defendant in effect on May 21, 2002 and any revisions.

    **Response No. 31**: Alcatel objects to this Request for the reasons stated in the General
Objections. Alcatel further objects to this Request for the reason that it requests production of
duplicative documents. Alcatel objects to this Request on the grounds that it seeks documents
that are neither relevant nor the production of which would lead to the discovery of admissible
evidence, it is over broad, and compliance would impose an undue and unreasonable burden on
Alcatel.

    ARGUMENT: The Plan's express terms, provided severance benefits to employees with

the "job level of Director". *See* Compl., Exh. A at 8 (Article 4, §4.2). Throughout the Plan

Administrator's and Administration Committee's decisions, appear the term "job levels". *See*

Compl., Exhs. E & G. No definition of "job levels" are provided within the Plan. As such, the

definition of "job levels" applied to Plaintiff by the Plan Administrator and Administration

Committee is relevant to the reasons for the denial of Plaintiff's claim. Moreover, documents

defining the term "job levels" within the Defendant are clearly relevant given the absence of a

such a definition in the Plan.

**REQUEST NO.32:** Each and every policy relating to the amount of Severance Pay to be
provided to former employees of Astral Point Communications, Inc.

    **Response No. 32**: *See* Defendant's identical Response to Request No. 31, above.

    ARGUMENT: To the extent that the Defendant possesses policies relating to the amount

of severance pay to be issued to the former APC employees such documents should be produced.

In this regard, given the undefined terms of the Plan and the alleged different treatment provided

to certain employees over others, any policies relating to the severance amounts allocated to the

APC employees is clearly relevant to whether the Plan Administrator interpreted the Plan in a uniform and non-discriminatory manner.

**REQUEST NO.33:** Each and every document reflecting, referring or relating to the decision to alter Plaintiff's job title from "Sales Director" to "Account Director" as contained in the Defendant's "Severance Statement" of May 21, 2002.

> **Response No. 33**: *See* Defendant's identical Response contained in Response No. 31.

ARGUMENT: In or about September 2000, Plaintiff began working at APC in the capacity of "Sales Director." On or about April 3, 2002, APC was acquired by Defendant. From the date of the acquisition until May 21, 2002, Plaintiff was not informed of any change in his employment status nor was he informed that his position, as Sales Director, had been subject to reclassification. On the date of his layoff, however, Defendant, for the first time, provided Plaintiff with a "Severance Statement" identifying him as an "Account Director" and indicating that he would receive 1.5 weeks of severance pay instead of the 26 weeks entitled to a Director. *See* Compl., Exh. B. It is the Plaintiff's contention that the Defendant altered his title to avoid the payment of Director's severance under the Plan. As such, this information is relevant to the determinations made to deny Plaintiff severance benefits.

**REQUEST NO.35:** The Astral Point Communications, Inc. Job Classification System in effect on January 1, 2002 and any subsequent revisions.

> **Response No. 35**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it is vague, ambiguous, and does not describe with reasonable particularity the requested documents. Without limiting the breadth of its foregoing objections, Alcatel notes that a "system" is not a document or thing subject to Rule 34 production. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence, it is over broad, and compliance would impose an undue and unreasonable burden on Alcatel.

ARGUMENT: On or about April 3, 2002, APC was acquired by the Defendant. At APC, and following the acquisition, Plaintiff was a Sales Director. In this regard, the Defendant,

through discovery, has focused on Plaintiff's job title and duties while employed by APC. In

addition, Defendant has represented that Plaintiff had no management responsibilities at APC in

order to support its claim that Plaintiff was not a Director and was not entitled to severance pay

as a Director. Thus, the job classification system in place at APC is clearly relevant to the

Defendant's defenses in this matter. *See also* Argument to Response No. 18.

**REQUEST NO.42**: All documents reflecting, referring or relating to the management structure
at Astral Point Communications, Inc. in effect in 2001 and 2002, including but not limited to all
management and non-management organizational charts and reporting structures.

**Response No. 42**: *See* Defendant's identical Response to Request No. 31, above.

ARGUMENT: The Defendant contends that the Plaintiff did not serve in a managerial

role at APC in support of its decision to deny Plaintiff severance benefits. Upon information and

belief, the Defendant, following the acquisition of APC obtained all of the APC documents.

Further, the Defendant asserts that Parenteau and Micelli served in managerial roles while

employed by APC. Clearly, any documents reflecting the management structure at APC is

reasonably calculated to oppose the Defendant's position and must be produced.

**REQUEST NO.43**: All documents reflecting, referring or relating to the Defendant's
management structure in effect following the acquisition of Astral Point Communications, Inc. in
2002, including but not limited to all management and non-management organizational charts
and reporting structures.

**Response No. 43**: See Defendant's identical Response to Request No. 31, above.

ARGUMENT: As stated in Argument No. 42, the Defendant contends that the Plaintiff

did not serve in a managerial role at APC or Defendant in support of its decision to deny Plaintiff

severance benefits. Defendant clearly is in possession of its management structure following the

acquisition of ACP. Further, the Defendant claims that Parenteau and Micelli served in

managerial roles while employed by Defendant. Any documents reflecting the management

21

structure at Defendant is reasonably calculated to oppose the Defendant's position and must be

produced.

### ii. *Documents Related to the Defendant's Layoff Plan, Request Nos. 15 and 19*

**REQUEST NO.15**:  The layoff plan or other document(s) evidencing Defendant's decision to layoff the former employees of Astral Point Communications, Inc., including but not limited to all documents relating to the funding of the layoff plan.

**Response No. 15**:  Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence, it is over broad, and compliance would impose an undue and unreasonable burden on Alcatel.

ARGUMENT:   It is common with regard to corporate layoff plans to include the

provision for severance and related benefits.  Such layoff plans may include the specific

identification of employees, their titles and expected severance amounts.  As such, the layoff

plan may lead to the discovery of admissible evidence as it related to Plaintiff's severance

benefits and whether he was treated in a non-discriminatory fashion as compared to others.

Further, in the instant matter, the Plan in the instant matter notes that "All Salary

Continuation and Severance Payments payable to a terminated Employee under this Plan will be

paid from the general assets of the Employer..." *See* Compl., Exh. A, Article 7.2 at 12. In this

regard, it appears that the Defendant possessed motivation to discriminate given the fact that it

was providing severance pay from its general assets.  It is suspect when high level employees

who are entitled to significant severance benefits are denied those entitlements under a Plan.  As

such, any documents relating to the funding of the layoff plan by the Defendant should be

produced.

**REQUEST NO.19**:  All documents reflecting, referring or relating to the amount of money expected to fund the Plan following the layoffs, including but not limited to calculations, accounting analysis, audits, evaluations or any restrictions to the funding.

**Response No. 19**: *See* Defendant's identical Response to Request No. 15, above.

ARGUMENT: *See* Argument to Response No. 15.

### *iii. Plaintiff's Request For Documents Relating To Employees That Received Severance Benefits Under the Plan: Request Nos. 20 -22, 29 and 38-41*

Under the Plan, "any exercise of discretion by the Plan Administrator or Appeals

Committee must be exercised in a uniform and nondiscriminatory manner." *See* Compl., Exh.A

at S-3. In his appeal and Complaint, the Plaintiff alleged that the Plan Administrator did not

apply the terms of the Plan in a "uniform and nondiscriminatory manner" in that at least two

other former APC employees, Parenteau and Micelli, whose job duties and responsibilities were

identical to those of Plaintiff, received severance benefits under the Plan equal to twenty-six (26)

weeks of their regular base pay. *See* Compl., par. 19. In sum, the Plaintiff has alleged that he has

been subjected to discrimination in the application of the Plan.

In addition, according to the Administration Committee, it investigated Plaintiff's claims

and nevertheless rejected his claim for benefits. *See* Compl., Exh. G. The Defendant has refused

to produce any documents relating to these employees or others as they relate to the Plan

Administrator's application of the Plan.

In this regard, the Court of Appeals for the First Circuit in *Liston v. Unum Corporation*

*Officer Severance Plan*, 330 F.3d 19, 25 (1st Cir. 2003), recognized that "how others were treated

could – in some cases – be substantively relevant to the question whether the administrator's

construction and application of the plan ... was reasonable." S*ee also, Mauser v. Raytheon Co.*

*Pension Plan*, 239 F.3d 51, 56-57 (1st Cir. 2001). The Court additionally stated,

Imagine, for example, that the plan was unclear as to whether an officer who had

23

served for less than three years could qualify for coverage. Conceivably, proof that other officers who had served only one year were regularly given benefits could represent an administrative construction bearing on the meaning of the plan and undermine the reasonableness of a contrary and disparate reading in a given case.

*Id.*

Under the Court's decision in *Liston*, in addition to the DOL mandated production of documents, Plaintiff is entitled to discovery concerning the decisions made by the Defendant relating to the identified employees.

**REQUEST NO.20:** All documents considered by the Alcatel USA, Inc. Administration Committee, as set forth in its decision of December 23, 2002, in its investigation of the decision to provide Fred Parenteau with Severance Pay as a "Director."

**Response No. 20**: *See* Defendant's identical Response to Request No. 15, above.

ARGUMENT: The Administrative Committee allegedly investigated the decision to provide Parenteau and Micelli with severance pay as a directors. It now refuses to allow access to the information it investigated despite the fact that the substance of Plaintiff's allegations directly involve discrimination by the Defendant in the application of the Plan. Indeed, the treatment of these employees and others is substantively relevant under First Circuit case law.

Moreover, as stated above, the DOL requires "full and fair review" of ERISA claims and to require that claimants be given access to all "relevant" documents. 29 U.S.C. §2560.503-1(h)(2)(iii). Relevant documents include those were relied on in making the benefit determination, were submitted, considered, or generated in the course of making the benefit determination (without regard to whether such document, record, or other information was relied upon in making the benefit determination) or which demonstrates compliance with the administrative processes and safeguards of the plan. *See* 29 U.S.C. §2560.503-1(m)(8)(i)-(iii).

For these reasons it is clear that the documents sought by the Plaintiff are required to be produced.

**REQUEST NO.21:** All documents reflecting, referring or relating to the determination to alter, change or reclassify any job titles of the former Astral Communications, Inc. employees prior to the layoff that is the subject of the instant lawsuit.

**Response No. 21**: *See* Defendant's identical Response to Request No. 15, above.

ARGUMENT: *See* Argument to Response Nos. 15 and 33.

**REQUEST NO.22:** All documents considered by the Alcatel USA, Inc. Administration Committee, as set forth in its decision of December 23, 2002, in its investigation of the decision to provide Daniel Micelli with Severance Pay as a "Director."

**Response No. 22**: *See* Defendant's identical Response to Request No. 15, above.

ARGUMENT: *See* Argument to Response No. 20.

**REQUEST NO.29:** The employment files and/or personnel files of Fred Parenteau and Daniel Micelli.

**Response No. 29**: Alcatel objects to this Request for the reasons stated in the General Objections.

ARGUMENT: The instant matter involves the allegation that the Plan administrator and/or Administration Committee did not apply the terms of the Plan in a "uniform and nondiscriminatory manner" by providing at least two former APC employees with Director's severance benefits under the Plan. Indeed, the Appeals Committee investigated and considered Plaintiff's the allegations. *See* Compl., Exh. G.

Work related information is fair game in a discrimination case. Indeed, these employees' positions, receipt of severance, job duties and functions, managerial responsibilities, job classifications, pay levels (Defendant has suggested that pay levels reflect management responsibilities), and management structure are all central to Plaintiff's claims of discrimination. The personnel files of these employees will likely demonstrate the precise information that Defendant is relying on to defend its actions in this matter.

25

Further, in order to protect the privacy of the individuals, Plaintiff proposed that no

medical information, disciplinary action or information related to their private lives be produced.

Nevertheless, Defendant refused production. *See Cobb v. The Rockefeller University*, 1991 U.S.

Dist. Lexis 15278 (S.D.N.Y. 1991)(personnel files of co-workers ordered produced to plaintiff).

**REQUEST NO.38:** The "Confidential Severance Agreement and General Release" executed by Fred Parenteau.

**Response No. 38**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence.

ARGUMENT: Plaintiff seeks the actual Agreement executed by and between Parenteau

and Defendant. Clearly, Parenteau was provided with "Director's" severance benefits. It is

believed that the terms of the Agreement demonstrate the amounts received in severance, and

other benefits that Plaintiff should have received if the Plan had been properly applied and, as

such, will demonstrate damages. The receipt of those benefits and the circumstances of their

receipt are central to Plaintiff's discrimination claim.

**REQUEST NO.39:** The "Confidential Severance Agreement and General Release" executed by Daniel Micelli.

**Response No. 39**: *See* Defendant's identical Response to Request No. 38, above.

ARGUMENT: *See* Argument to Response No. 38.

**REQUEST NO.40:** All documents provided by the Defendant to Fred Parenteau subsequent to his receipt of Severance Pay under the Plan.

**Response No. 40**: Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it seeks documents that are neither relevant nor the production of which would lead to the discovery of admissible evidence, it is over broad, and compliance would impose an undue and unreasonable burden on Alcatel.

ARGUMENT: As stated, the Administrative Committee allegedly investigated the

provision of severance benefits to Pareanteau. As such, any communications to Parenteau from

the Defendant are relevant to Plaintiff's claim. In addition, according to Counsel for the

Defendant, after Parenteau was provided severance benefits under the Plan, and after Plaintiff

asserted that he was subjected to discriminatory treatment, the Defendant apparently

communicated with Parenteau concerning his receipt of benefits under the Plan. Plaintiff

believes that the communications may contain admissions or factual statements evidencing that

Plaintiff was not treated equally under the Plan.

**REQUEST NO.41:** All documents provided by the Defendant to Daniel Micelli subsequent to his receipt of Severance Pay under the Plan.

> **Response No. 41**: *See* Defendant's identical Response to Request No. 40, above.

ARGUMENT: *See* Argument to Response No. 40.

### iv.  *Plaintiff's Request For Documents Related To Similar Actions Against the Defendant: Request Nos. 23 & 24.*

**REQUEST NO.23:** All documents reflecting the filing of any lawsuit against the Plan or Defendant relating to the Plan since January 1, 2002.

> **Response No. 23**: *See* Defendant's identical Response to Request No. 40, above.

ARGUMENT: The Plaintiff has additionally requested documents, for a limited period

of time, concerning other lawsuits against the Defendant and/or Plan. In this regard, there may

be other incidents resulting in litigation over similar facts and/or allegations against the

Defendant for discriminatory treatment in the manner in which benefits were provided to its

employees. The information sought may also demonstrate similar discriminatory conduct or

contradictory positions taken by the Defendant in interpreting the terms of the Plan.

**REQUEST NO.24:** All complaints and appeals to the Plan Administrator and/or Alcatel USA, Inc. Administration Committee since January 1, 2002.

> **Response No. 24**: *See* Defendant's identical Response to Request No. 40, above.

ARGUMENT: In the instant matter, the Plan did not define the term "job level of

Director". In addition, as a basis for the severance benefit denial, the Defendant relied upon such

terms as "exempt individual contributor", "individual contributor", "internal job classification

system", and "Job Level System." None of these terms are contained in the Plan. Plaintiff has

requested other complaints and appeals (for a limited period of time) in order to determine

whether the Defendant has interpreted the Plan in a uniform and non-discriminatory manner.

Other complaints and appeals may also yield information evidencing definitions of the terms

applied in the instant matter. *See also*, Argument to Response No. 23.

### *v. Plaintiff's General Requests for Information: Request Nos. 26, 28, 34, 36 & 37.*

**REQUEST NO.26:** The acquisition agreement, purchase and sale agreement or other agreement evidencing the acquisition of Astral Point Communications, Inc. by the Defendant.

**Response No. 26**: *See* Defendant's identical Response to Request No. 40, above.

ARGUMENT: In some corporate acquisitions there exist agreements between corporate

entities as to the amounts of severance to be provided to employees of the acquired company in

the event of a layoff. Plaintiff seeks to review the requested documents as to the existence of

such an agreement.

**REQUEST NO.28**: All agreements between Astral Point Communications, Inc. and the Defendant concerning the amount of Severance Pay to be provided to the employees of Astral Point Communications, Inc.

**Response No. 28**: *See* Defendant's identical Response to Request No. 40, above.

ARGUMENT: To the extent that the Defendant and APC reached agreement concerning

the amounts of severance to be provided to the former APC employees and said agreement is in

conflict with the Plan, the Plaintiff is entitled to review such information.

**REQUEST NO.34:** All documents and tangible things Defendant intends on offering in evidence at the trial of this action.

**Response No. 34:** Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel further objects to this Request for the reason that it seeks to impose on Alcatel obligations before the pretrial deadlines scheduled by the Court. Moreover, this Request is premature. Alcatel has not yet determined the identity of the documents and tangible things it intends to offer at trial of this action. Alcatel will supplement its response and provide an exhibit list in accordance with the times provided by the Federal Rules of Civil Procedure and any orders of the Court.

ARGUMENT: The Defendant plainly has some indication as to the documents it is

relying on in the defense of this action. The fact that the Court requires identification at some

later date does not preclude such a request during the discovery phase of the litigation.

**REQUEST NO.36:** All documents which evidence the allegations contained in the Complaint.

**Response No. 36:** Alcatel objects to this Request for the reasons stated in the General Objections. Alcatel objects to this Request on the grounds that it purports to require Alcatel to make judgments concerning whether a particular document would support an allegation made by Foley (not Alcatel). Alcatel further objects to this Request on the grounds that it is over broad and compliance would impose an undue and unreasonable burden on Alcatel, particularly with respect to uncontested allegations of the Complaint.

ARGUMENT: The Request simply seeks documents evidencing the allegations of the

Complaint. This a common request aimed at determining what, if any, documents the Defendant

possesses related to Plaintiff's allegations. Clearly, since the Defendant made certain

determinations in denying Plaintiff's claim for benefits (including an investigation of the

allegations of discrimination), it is in possession of documents evidencing the allegations of the

Complaint. As such, the Request imposes no undue burden on the Defendant. It made the

decisions in this matter. Moreover, Defendant's complaint that it may need to "make judgments"

in determining the documents to be produced is not a valid objection to the Request. Many

discovery requests require such judgments to be made in determining the scope of the

information sought.

**REQUEST NO.37:** All documents identified in Defendant's answers to interrogatories.

**Response No. 37**: Alcatel objects to this Request for the reasons stated in the General
Objections. Alcatel further objects to this Request for the reasons stated in Alcatel's responses
and objections to the Interrogatories.

ARGUMENT: Any documents relied upon or identified in the Defendant's limited

answers to interrogatories should be produced.

### vi. *The Defendant Has Failed to Identify Any Documents Being Withheld.*

In Paragraph 7 of his "Definitions and Instructions" section of his Request for Production

of Documents, Plaintiff requested that,

> For each document which is sought by Plaintiff's Request for Production of Documents,
> which Defendant declares is beyond the scope of discovery or non-discoverable, please
> state along with any objections: (i) the title or identifying name of the document; (ii) the
> date of the document; (iii) the general nature of the document; (iv) the name of the author
> or source of the document; (v) the name of the addressee or intended recipient of the
> document; (vi) the identity of each person having custody of the document; (vii) the
> subject matter and/or circumstances giving rise to the preparation of the document; and
> (viii) the legal and/or factual basis upon which the privilege or protection is claimed.

*See* Exhibit A. In this regard, Rule 26(b)(5) requires the similar disclosure of privileged or trial

preparation materials and requires that the party withholding the information "shall describe the

nature of the documents, communications, or things not produced or disclosed in a manner that,

without revealing information itself privileged or protected, will enable other parties to assess the

applicability of the privilege or protection." Despite Plaintiff's request for identification of the

withheld documents and Rule 26 (B)(5), no "privilege log" containing the requested information

has been produced.

In sum, the Plaintiffs respectfully request that the Court order the production of this

information.

### V. CONCLUSION

For all of the above-stated reasons, the Plaintiff, William Foley, respectfully requests that

his motion be granted.

> For the Plaintiff,
> **WILLIAM FOLEY,**
> By His Attorney,
>
> John D. Burke, BBO #556951
> Dumont, Morris & Burke
> 14 Beacon Street
> Suite 300
> Boston, Massachusetts 02108
> (617) 227-7272

August 23, 2005

31

## CERTIFICATE OF SERVICE

I, John D. Burke, attorney for the Plaintiffs, certify that this document was served upon counsel for the Defendant, T. Christopher Donnelly and Sharan Goolsby, by U.S. Mail, postage prepaid, on August 23, 2005.

Signed under oath.

John D. Burke

32