UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM FOLEY, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>ALCATEL USA, INC., )<br>)<br>Defendant. ) | Civil Action No. 04- 12126 EFH |

**DEFENDANT ALCATEL USA, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Alcatel USA, Inc. ("Alcatel") submits this memorandum in support of its motion for summary judgment.

## I. PRELIMINARY STATEMENT

The material facts relating to Plaintiff's claim under Section 502(a)(1)(B) of the Employment Retirement and Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. §1001 et seq. ("ERISA"), are undisputed. The documents submitted by Plaintiff as part of the Complaint and Plaintiff's own admissions support summary judgment. The ERISA Plan makes a clear grant of authority and discretion to the Plan Administrator. Jurisprudence flowing from the United States Supreme Court establishes the guiding principle in deciding this matter: the Plan Administrator's decision may only be overruled if the Plan Administrator abused the discretion granted by the Plan. The administrative record speaks for itself – the Plan Administrator did exactly as directed and as permitted under the Plan. As a matter of law, the Plan Administrator did not abuse

the discretion granted under the Plan, Plaintiff's claims against Alcatel fail, and summary judgment must be granted.

## II. UNDISPUTED FACTS

The undisputed facts are, in accordance with Local Rule 56.1, set forth separately in Defendant's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried ("Facts"), and are incorporated herein by reference. Those facts are summarized as follows:

The plaintiff William Foley ("Plaintiff") began working for Astral Point Communication ("Astral Point") in September 2000 as a "sales director."[1] (Complaint, ¶5.) In April 2002, Astral Point was acquired by Alcatel. (Facts, ¶1.) Thereafter, Alcatel made a business decision to lay off certain employees, including Plaintiff. (Facts, ¶2.)

On May 21, 2002, Alcatel issued a "Severance Statement" to Plaintiff that notified him his salary and all regular benefits would continue for nine weeks from that date (i.e., until July 22, 2002). (Facts, ¶3.) It also notified him that he was eligible to receive 1.5 weeks of severance pay if he returned the enclosed Confidential Severance Agreement and General Release ("Release") by July 4, 2002. (Facts, ¶3.) Included with the severance statement was a summary plan description ("SPD") of Alcatel's Severance Benefit Plan ("Plan"). (Facts, ¶4.)

The Plan "does not establish a legal obligation for the Employer to pay any severance benefits, and the Employer reserves the prerogative to discontinue offering severance benefits or to pay a lesser amount of severance benefits than set forth in this Plan document." (Facts, ¶5.) The Plan states that an eligible employee who qualifies for

---

[1] The title account director is equivalent to the title sales director. Both terms refer to employees having the same role or position, neither of which have managerial responsibilities and both terms are used by Plaintiff and other witnesses in this case interchangeably.

severance benefits under the Plan is entitled to receive nine (9) weeks of regular base pay. (Facts, ¶6.) Under Article 4.2, an eligible employee who signs and returns the Release is entitled to additional severance benefits. (Facts, ¶7.) The "minimum severance payment for non-director/VP" is 1.5 weeks of regular base pay (the amount offered to Plaintiff for his 0-1 years of service at Alcatel). (Facts, ¶8.) The minimum severance payment for "employees with the job level of director, senior director or AVP" on the other hand is 26 weeks of regular base pay. (Facts, ¶9.)

The Plan does not define the terms "Non-Director/VP" or "Director, Senior Director or AVP," but under Article 5.1 the Plan Administrator:

> …will have the power to implement, operate and interpret this Plan and to take such other action as the Plan Administrator deems equitable and consistent with the purpose of the Plan in the particular circumstances. Although the Plan Administrator may not change any part of the Plan, the *Plan Administrator does have the responsibility and discretion to interpret and enforce all Plan provisions in its sole and absolute discretion.*

(Emphasis added.) (Facts, ¶10.)

The Plan further sets forth internal claims procedure. Under Section 5.3:

> Any Employee covered by this Plan who believes he or she is entitled to benefits under this Plan but who has not been advised of such benefit or who believes that the calculation of the benefit is in error should file a claim with the Plan Administrator. The claim should be filed within thirty (30) days of the date on which the Employee had learned of the scheduled termination of the amount of the benefit to be paid or not paid under this plan.
>
> The Employee should submit a signed and dated claim in writing that briefly explains the basis for the claim. The claim must be sent by certified mail or presented in person to the Plan Administrator. If the claim is presented in person to the Plan Administrator then the Plan Administrator must give the Employee written acknowledgement of receipt.

(Facts, ¶11.)

3

Under Section 5.4: "Compliance with the internal claims procedures set forth in Section 5.3 and Section 5.4 is a mandatory precondition to filing an action for severance benefits in state or federal court." (Facts, ¶12.)

After Plaintiff received his Severance Statement, phoned Julie Liptak, Alcatel's Vice President of Human Resources, and stated that he believed he was entitled to the minimum 26-week severance pay. Ms. Liptak informed him that the 1.5 week additional severance pay was appropriate. (Facts, ¶13.) Ms. Liptak sent a letter to Plaintiff on June 25, 2002, reiterating that he was not entitled to a director-level severance package. (Facts, ¶14.)

On July 17, 2002, Plaintiff filed a "formal claim" disputing his severance benefits on July 17, 2002, which stated that he should have received "directors severance" based on his position as sales director and "the fact that two other sales directors from Astral Point performing the same sales role and duties as me received the 26 week director's severance." (Facts, ¶15.) On August 9, 2002, Alcatel's Director, Corporate Benefits, Toby Todd responded on behalf of the Plan Administrator. (Facts, ¶19.) Mr. Todd's letter informed Plaintiff again:

> You were employed in a sales position with a job title of "Sales Director." However, your job was not that of a Director. Your job level, as classified by the Alcatel Job level system, was an exempt individual contributor. The distinction between individual contributor and manager is the placement of 'Director' or 'Manager'. Director, Manager or VP at the beginning of the title classifies you as a member of management. These same titles when placed at the end of the title classify you as an individual contributor. For business reasons and customer contacts, it is important to include these distinctions in the title, without the management responsibility. This is a common practice in other companies.
>
> In addition, there are management positions which do not rise to the level of Director of Vice President, so even if you were a 'manager' you still would not be eligible to a higher minimum severance payment. The level

4

    of severance benefits communicated to you on May 21, 2002 is appropriate.

(Facts, ¶19; see also Complaint, Exh. E.)

On August 26, 2002, Plaintiff filed an appeal at the Appeals Committee of the Plan Administrator. (Facts, ¶20; see also Complaint, Exh. F.) Plaintiff described the Plan Administrator's decision as "wholly arbitrary" and also claimed that it was "discriminatory" because two other former Astral Point employees to whom he compared himself -- Dan Micelli and Fred Parenteau -- had received the 26-week benefit level. (Facts, ¶20.)

Alcatel's Administration Committee ("Committee") undertook a review of Plaintiff's appeal in a December 9, 2002, meeting. (Facts, ¶21.) Brenda Mills, Senior director of corporate benefits, was tasked with investigating and summarizing Plaintiff's claim and presented such a summary to the Committee. (Facts, ¶21.) Ms. Mills determined that Plaintiff was classified in Alcatel's job classification system as an "account director" (a/k/a sales director),[2] a non-management sales position and that he was not, therefore, entitled to the 26-week severance payment. (Facts, ¶22.) Ms. Mills also investigated the severance paid to Mr. Parenteau and Mr. Micelli and determined that each had received the 26-week level severance based on their titles in Alcatel's job classification system, though it was determined that Parenteau had received the 26-week severance payment apparently in error because his title had never been changed to reflect that he was no longer in a management position at the time of Alcatel's acquisition of Astral Point. (Facts, ¶23.) Ms. Mills further reviewed and summarized for committee the correspondence from Plaintiff on the one hand and Mr. Todd and Ms. Liptak on the

---

[2] See note 1.

5

other. (Facts, ¶24.) The administrative record of Plaintiff's claim before the Committee was the Severance Plan and SPD, the severance statement to Plaintiff, various internal correspondence, correspondence with Plaintiff, and the meeting agenda and summary of Plaintiff's claim prepared by Ms. Mills. (Facts, ¶25.)

On December 23, 2002, on behalf of the Committee, Ms. Mills sent Plaintiff a letter denying his appeal and attaching a "Sales Level Chart" that describes the classifications used by Alcatel for its sales professionals. (Complaint, Exh. G.) Ms. Mills' letter stated:

> A Sales Director is a sales position with minimal managerial authority and responsibilities. These job characteristics, coupled with the level of compensation for the position of Sales Director, place it at the level of an exempt individual contributor as opposed to a management position. This placement is reflected in the enclosed copy of the Job Level System. Further, while your title contained the term, "Director," this fact does not serve to convert an otherwise non-management job into a management position. Indeed, as is evidence by the enclosed Job Level System, AUSA uses this term in the title of other non-management positions for business reasons and customer contacts. Whether a job that contains the term "director" is that of an individual contributor rather than a manager is identified in the Job Level System by the placement of that term. Specifically, under the Job Level System, placement of the term "Director" or "Manager" or "VP" at the beginning of a job title is classified as management. The inclusion of these same terms at the end of a job title is used to classify individual contributors. Thus, the fact that your position uses the term "Director" at the end of your title of Sales Director, coupled with the non-management nature of your activities and your level of compensation, justifies the treatment of your job as a non-director under the Plan. Indeed, the AUSA Job Level System is routinely used for purposes of classifying positions under the Plan and employees with job positions and titles similar to you have been treated the same way (i.e. given benefits based on the status of a non-director position).
>
> ………….
>
> In your letter you also alleged that the decision on who receives the Minimum Severance Payment for Director is discriminatory in that Fred Parenteau (Director of N.E. Sales) and Dan Micelli (Director of Major Accounts) received Severance Payment of 26 weeks due to their Director

status. We have investigated these situations, and find nothing to suggest that you should be paid as a Director.

(Facts, ¶26.)

Plaintiff filed his Complaint in this Court on or about September 30, 2004. At the time he filed the Complaint, Plaintiff did not meet the mandatory precondition for filing a claim in federal court because he failed to file a written claim to Alcatel's plan administrator within thirty days of receiving his Severance Statement. (Facts, ¶¶17-18.) At no time has Plaintiff returned the Release to Alcatel, another condition for receiving severance benefits under the Plan. (Facts, ¶¶30-31.)

In his responses to Alcatel's requests for admissions, Plaintiff has admitted that he did not have a managerial or supervisory role at Alcatel. (Facts, ¶28.) He further has admitted that he neither directed nor supervised employees at Alcatel. (Facts, ¶29.) Thus, there is no dispute regarding the fact that Plaintiff was not a manager at the time that Plaintiff was terminated from Alcatel.

In short, there is no dispute regarding the fact that Plaintiff was not a Director, a Senior Director, or an AVP at the time that he was terminated from Alcatel. Plaintiff was not entitled to the severance benefits of a Director, Senior Director, or an AVP under the Plan.

There was no "discrimination" at Alcatel against Plaintiff. He would have received all of the severance benefits to which he was entitled if he had timely returned the Release. No Alcatel "account director" who was notified of termination between January 1, 2002, and January 5, 2005, received director-level severance payments from Alcatel. In that time frame, there were 66 account directors and senior account directors who were eligible for severance and not one of those people received a

minimum 26 week director-level severance payment. Only the 16 employees who were directors of sales or directors of sales support qualified for the minimum 26 week severance payment. (Facts, ¶33.)

### III. STANDARD OF REVIEW

In this case, Alcatel's Plan states that the Plan Administrator has the "power to implement, operate, and interpret this Plan" and also has "the responsibility and discretion to interpret and enforce all Plan provisions in its sole and absolute discretion." Plan, Section 5.1. "[W]here plan administrators are given discretionary authority to determine benefits eligibility or to construe the terms of a plan, an arbitrary and capricious standard of review will be applied." Lane v. Director of Employee Benefits, Gannett Co., Inc., 253 F.Supp.2d 57, 62 (D. Mass. 2003) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 1, 115 (1989); Brigham v. Sun Life of Canada, 317 F.2d 72, 80 (1st Cir. 2003); Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997).) In Lane, the plan at issue similarly vested in the plan administrator "the authority to control and manage the operation of the Plan, [and] to construe and interpret the terms of the Plan." 253 F.Supp.2d at 62. With "this clear delegation of discretion," the court stated it was "obligated to apply the arbitrary and capricious standard of review." Id.

In an ERISA case where the arbitrary and capricious standard of review applies, the district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). The arbitrary and capricious standard of review "requires deference to the findings of the plan administrator, and, thus, even under FED. R. CIV. P. 56, does not permit a district court independently to weigh the

proof. Rather, the district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Id. at 18.

> Put another way,
>
> the issue here is simply whether the judge deems the administrator's denial of benefits irrational. Assuming that the decision is to be made by the judge based solely on the record made at the administrative level, summary judgment is merely a mechanism for tendering the issue and <u>no special inferences are to be drawn in favor of a plaintiff resisting summary judgment; on the contrary, the rationality standard tends to resolve doubts in favor of the administrator.</u>

Liston v. Unum Corporation Officer Severance, 330 F.3d 19, 23 (1st Cir. 2003) (emphasis added).

## IV. LEGAL ARGUMENT

A. This Court Should Grant Alcatel Summary Judgment As A Matter Of Law Because Plaintiff Has Presented No Evidence That The Plan Administrator Acted Arbitrarily And Capriciously

Obviously, unless the ERISA Plan provides otherwise, an employee does not have a "right" to severance benefits if his employment is terminated. In this case, however, Alcatel provides for generous severance benefits for those employees who comply with the Plan requirements, including the nine weeks of regular base pay that Plaintiff received when he was terminated by Alcatel after his employ there of a mere seven weeks. Alcatel goes even further in providing eligibility for additional severance benefits to those terminated employees who sign and return the Release. For those employees that Alcatel classifies at a Director, Senior Director or Assistant Vice President level, and who return a Release, Alcatel's Plan includes eligibility for a minimum additional 26 week severance payment. For Non-Director level employees who return a Release, Alcatel's Plan includes eligibility for a minimum 1.5 week severance payment. As a non-Director

level employee, Plaintiff would have been eligible for the additional 1.5 week severance payment if he had signed the Release. Based on the Plan and the information provided to the Plan Administrator, the Plan Administrator's decision that Plaintiff was not entitled to Director-level severance benefits was not, as a matter of law, an abuse of discrimination.

Before the administration committee, Plaintiff did not claim that he was, or should have been, classified in Alcatel's job classification system as a "Director, Senior Director or Assistant Vice President." Plaintiff has admitted that he had no managerial or supervisory duties at Alcatel. Moreover, Alcatel consistently has stated that the title "account director" does not rise to the Director level under its job classification system, but rather is a term used for business and customer contacts. Moreover, it has presented evidence that it has treated all "account directors" similarly to Plaintiff for purposes of severance decisions.

The only "evidence" that Plaintiff submitted to Alcatel's administration is that his title was "account director" and that two other former Astral Point employees to whom he compared himself received the Director-level severance benefits. Plaintiff presented absolutely no evidence or information that Alcatel – whose Administrator has reserved the absolute discretion to define the job "level" of Director, Senior Director or Assistant Vice President[3] – somehow abused that discretion when it had consistently determined that "account directors" whose positions are non-managerial and routine sales jobs were not eligible for the enhanced severance payments it reserved for employees having more

---

[3] Plaintiff may attempt to argue that these terms are ambiguous and thus should be construed against Alcatel. But "[u]nlike the interpretation of ambiguous terms in insurance policies which uses the doctrine of *contra proferentum,* when interpreting severance pay plans in the ERISA context, we generally do not construe ambiguous terms against the drafter." *Rodriguez-Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 586 (1st Cir.1993.)

responsibilities (including management of other employees). Moreover, the fact that Plaintiff viewed himself as "similarly situated" as Messrs. Micelli and Parenteau does not mean he was entitled to enhanced severance benefits.

In contrast, Alcatel has shown that these two men were classified in its system at Director-level positions -- i.e., Directors of Sales -- and whether they were misclassified or received benefits in error does not transform Plaintiff's role, classification, or job level, nor does it otherwise elevate Plaintiff to a Director or AVP level at Alcatel. See, e.g., Liston, 330 F.3d at 24-25 (the plan administrator had discretion to interpret terms in its Plan and court refused to allow inquiry into what severance decisions were made with other executives). As in Liston, "on the facts that [plaintiff] presented to the administrator and to [the court], there is nothing unreasonable about the result reached by the administrator." Id. at 25.

Plaintiff tries to escape the reality that the "arbitrary and capricious" standard of review dooms his claim by asserting "discrimination." The Court, in its review of the Complaint, will see that Plaintiff is not, in fact, claiming "discrimination" under the relevant section of ERISA. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan."29 U.S.C. § 1140. To establish a prima facie case under Section 510, Plaintiff must show that he "(1) belongs to the protected class; (2) was qualified for the position involved; and (3) was discharged or denied employment under circumstances that provide some basis

for believing that prohibited intent existed." Feldman v. American Memorial Life Ins. Co., 196 F.3d 783, 792 (7th Cir. 1999). Plaintiff has not asserted -- and cannot argue -- that he meets the prima facie case for ERISA discrimination.

Although Plaintiff's argument that his title at Astral Point of "sales director" entitled him to eligibility for Director or Assistant Vice President level of benefits under Alcatel's Plan may have some superficial appeal (his title did have the word "director" in it), Alcatel has explained in great detail to him and to this Court that his title is not a Director-level position or above, the title of sales director does not qualify him for these enhanced benefits under the Plan, and Alcatel has, in fact, treated all sales directors (a/k/a account directors) the same as Plaintiff for severance purposes. In any event, it is the Court's job to review the decision under an arbitrary and capricious standard of review; "[i]t is, of course, the hallmark of such review that 'a court is not to substitute its judgment for that of the [decision-maker].' *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983.)" *Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir. 1998.)

In short, where Plaintiff has not shown that the Administrator's decision to find him ineligible for a minimum 26 week severance benefit under the Plan is arbitrary, capricious or irrational, this Court must grant Alcatel summary judgment as a matter of law. See, e.g., Liston, 330 F.3d at 26 (affirming district court's grant of summary judgment to plan where employee argued she was wrongfully denied severance); Affonso v. New England Electric Systems Cos. Standard Severance Plan For Non-Union Employees, 2002 U.S. App. Lexis 27228, * 9 (1st Cir. 2002) (upholding summary judgment on ERISA severance claim; employees arguing that they were eligible for

severance benefits pursuant to an ambiguous phrase in a plan had "the challenge of showing a lack of ambiguity in the terms such that no other interpretation fell within reasonable bounds"); Jorgensen v. Mass. Mut. Life Ins. Co., 2001 WL 1736636 (D. Mass. 2001) (granting summary judgment to employer in an ERISA severance claim: even if some facts made employee's claim "colorable," they did not render the "Plan Administrator's decision arbitrary and capricious").

> B. This Court Should Grant Alcatel Summary Judgment As A Matter Of Law Because Plaintiff Failed To Return The Necessary Release And Failed To Follow Internal Claims Procedures

Plaintiff failed to sign the Release and failed to timely appeal. Both of these failures to follow the Plan requirements compel summary judgment. Under Section 4.2 of the Plan: "In addition to the Salary Continuation payments described …above, an Eligible Employee who qualifies for severance benefits under the Plan and who signs and returns the [Release] without revoking signature shall receive the Severance Payment described in the table below…" It is undisputed that Plaintiff never signed the Release and clearly the language above conditions the additional severance benefits on the execution of the Release.

An employer may require an employee to sign a release as a condition of receiving enhanced severance benefits. See, e.g., Lockheed Corp. v. Sprink, 517 U.S. 882, 894 (1996) ("[An] employer can ask [an] employee to continue to work for the employer, to cross a picket line, or to retire early. The execution of a release of claims against the employer is functionally no different; like these other conditions, it is an act that the employee performs for the employer in return for benefits."). An employee who does not meet this mandatory condition will be found not to have standing to bring a

claim for severance benefits under ERISA. See, e.g., Burrey v. Pacific Gas & Elec. Co., 159 F.3d 388, 396 (9th Cir. 1998).

Plaintiff would have been eligible for a full severance pay of nine weeks of his base salary under the Plan plus the additional severance. To do so, however, Plaintiff was required to execute a release in favor of Alcatel. Having failed to do so, Plaintiff's claim fails and this Court should grant Alcatel summary judgment as a matter of law.

Additionally, Plaintiff's claim is barred by his failure to make a claim within 30 days of his receipt of the severance statement. It is undisputed that Plaintiff received his severance statement on May 21, 2002. Pursuant to Section 5.3 of the Plan, he was required to submit a claim in writing to the Plan Administrator within 30 days of that date. Plaintiff only submitted a written claim on July 17, 2002, well beyond the 30 days allowed. Pursuant to Section 5.4 of the Plan: "Compliance with internal claims procedures set forth in Section 5.3…is a mandatory precondition to filing an action for severance benefits in state or federal court."

Under ERISA's exhaustion requirement, "a claimant must have exhausted the plan's administrative remedies before bringing suit to recover benefits….A claimant is required to attend to the plan's internal appeal process first, unless the administrative route is futile or the remedy inadequate." Terry, 145 F.3d at 40. In Terry, the First Circuit upheld the grant of summary judgment to a Plan Administrator that rejected the plaintiff's claim for benefits in an appeal filed later than the sixty-day time period provided for in the Plan. The court held that although the plaintiff's claim was "exhausted," the plaintiff had "procedurally defaulted as a result of the late filing. The same principles which inform the ERISA exhaustion requirement also counsel that part of

that internal administrative process includes the responsibility on the claimant's part to file appeals in a timely fashion." Id.

In this case, Plaintiff has not suggested any reason why he could not have followed the Plan's requirements. He procedurally defaulted by failing to file a claim in writing to the Plan's administrators within thirty days of his receipt of the severance statement. His claim in this Court therefore cannot survive and this Court should grant summary judgment to Alcatel.

## V. **CONCLUSION**

For the foregoing reasons, Alcatel respectfully requests that this Court grant it summary judgment as a matter of law.

        ALCATEL USA, INC.

        By its attorneys,

        /s/ Jill Brenner Meixel
        T. Christopher Donnelly (BBO# 129930)
        Karen A. Pickett (BBO # 633801)
        Jill Brenner Meixel (BBO #652501)
        DONNELLY, CONROY & GELHAAR, LLP
        One Beacon Street, 33rd Floor
        Boston, Massachusetts 02108
        (617) 720-2880

        Sharan Goolsby
        Corporate Counsel
        Alcatel USA, Inc.
        3400 W. Plano Parkway
        Mailstop 009
        Plano, TX 75075

DATED: September 16, 2005