UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM FOLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil Action No. 04- 12126 EFH |
| ) | |
| ALCATEL USA, INC., ) | |
| ) | |
| Defendant. ) | |

**ALCATEL USA, INC.'S OPPOSITION TO WILLIAM FOLEY'S MOTION TO COMPEL AND ITS CROSS MOTION FOR A PROTECTIVE ORDER (WITH REQUEST FOR ORAL ARGUMENT)**

Defendant Alcatel USA, Inc. ("Alcatel") opposes plaintiff William Foley's motion to compel the production of documents ("Motion to Compel") and, pursuant to FED. R. CIV. P. 26(c), cross-moves for a protective order that limits the discovery of the plaintiff in this action to the administrative record. As grounds for the opposition and cross-motion, Alcatel asserts the following relevant facts and legal argument:

### I.    PRELIMINARY STATEMENT

Under the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. §1001 et seq. ("ERISA"), the Court's review should be limited to the administrative record before the Plan Administrator. See, e.g., Liston v. Unum Corporation Officer Severance, 330 F.3d 19, 23 (1st Cir. 2003). Likewise, Plaintiff's discovery should be limited to the administrative record before the Plan Administrator. Moreover, the Motion to Compel should be denied for all of the reasons stated in Alcatel's responses to Plaintiff's discovery requests.

### II.    RELEVANT FACTS

The plaintiff William Foley ("Mr. Foley") began working for Astral Point

Communication ("Astral Point") in September 2000 as a "sales director." (Complaint, ¶5.) In April 2002, Astral Point was acquired by Alcatel. (Complaint, ¶6.) After Alcatel's acquisition of Astral Point, Alcatel made a business decision to lay off certain employees, including Mr. Foley. (See Affidavit of Julie Liptak, which is incorporated by reference as if set forth fully herein ("Liptak Aff."), ¶4.)

On May 21, 2002, Alcatel issued a "Severance Statement" to Mr. Foley which notified him that his salary and all regular benefits would continue for nine weeks from that date (i.e., until July 22, 2002). (Complaint, Exh. B.) It also notified him that he was eligible to receive 1.5 weeks of severance pay if he returned the enclosed Confidential Severance Agreement and General Release ("Release") by July 4, 2002. (Complaint, Exh. B.) Included with the severance statement was a summary plan description (the "SPD") of Alcatel's Severance Benefit Plan (the "Plan"). (Liptak Aff., ¶8; see also Complaint, Exh. A (containing a copy of both the Plan and the SPD).)

The Plan "does not establish a legal obligation for the Employer to pay any severance benefits, and the Employer reserves the prerogative to discontinue offering severance benefits or to pay a lesser amount of severance benefits than set forth in this Plan document." (Complaint, Exh. A, the Plan, Art. 1.) The Plan states that an eligible employee who qualifies for severance benefits under the Plan is entitled to receive nine (9) weeks of regular base pay. (Complaint, Exh. A, the Plan, Art. 4.1.) Under Article 4.2, an eligible employee who signs and returns the Release further is entitled to additional severance benefits. (Complaint, Exh. A, the Plan, Art. 4.2.) The "minimum severance payment for non-director/VP" is 1.5 weeks of regular base pay (the amount offered to Mr. Foley for his 0-1 years of service at Alcatel). (Id.) The minimum

severance payment for "employees with the job level of director, senior director or AVP" on the other hand is 26 weeks of regular base pay. (Id.) The Plan does not define the terms "non-director/VP" or "director, senior director or AVP," but under Article 5.1:

> The Plan Administrator also will have the power to implement, operate and interpret this Plan and to take such other action as the Plan Administrator deems equitable and consistent with the purpose of the Plan in the particular circumstances. Although the Plan Administrator may not change any part of the Plan, the Plan Administrator does have the responsibility and discretion to interpret and enforce all Plan provisions in its sole and absolute discretion.

(Complaint, Exh. A, the Plan, Art. 5.1.) (Emphasis added.)

The Plan further sets forth internal claims procedure. Under Section 5.3:

> Any Employee covered by this Plan who believes he or she is entitled to benefits under this Plan but who has not been advised of such benefit or who believes that the calculation of the benefit is in error should file a claim with the Plan Administrator. The claim should be filed within thirty (30) days of the date on which the Employee had learned of the scheduled termination of the amount of the benefit to be paid or not paid under this plan.
>
> The Employee should submit a signed and dated claim in writing that briefly explains the basis for the claim. The claim must be sent by certified mail or presented in person to the Plan Administrator. If the claim is presented in person to the Plan Administrator then the Plan Administrator must give the Employee written acknowledgement of receipt.

(Complaint, Exh. A, the Plan, Art. 5.3.)

Under Section 5.4 of the Plan: "Compliance with the internal claims procedures set forth in Section 5.3 and Section 5.4 is a mandatory precondition to filing an action for severance benefits in state or federal court." (Complaint, Exh. A, the Plan, Art. 5.4.)

After Mr. Foley received his Severance Statement, he contacted Julie Liptak, Alcatel's Vice President of Human Resources, by telephone, and stated that he believed he was entitled to the minimum 26-week severance pay. Ms. Liptak informed him that

the 1.5 week additional severance pay was appropriate. (Liptak Aff., ¶9.) Ms. Liptak sent a letter to Mr. Foley on June 25, 2002, reiterating that he was not entitled to a director-level severance package. (Complaint, Exh. C.)

Mr. Foley filed a "formal claim" disputing his severance benefits on July 17, 2002, which stated that he should have received "directors severance" based on his position as sales director and "the fact that two other sales directors from Astral Point performing the same sales role and duties as me received the 26 week director's severance." (Complaint, Exh. D.) On August 9, 2002, Alcatel's Director, Corporate Benefits, Toby Todd responded on behalf of the Plan Administrator. Mr. Todd's letter informs Mr. Foley again:

> You were employed in a sales position with a job title of "Sales Director." However, your job was not that of a Director. Your job level, as classified by the Alcatel job level system, was an exempt individual contributor. The distinction between individual contributor and manager is the placement of 'Director' or 'Manager'. Director, Manager or VP at the beginning of the title classifies you as a member of management. These same titles when placed at the end of the title classify you as an individual contributor. For business reasons and customer contacts, it is important to include these distinctions in the title, without the management responsibility. This is a common practice in other companies.
>
> In addition, there are management positions which do not rise to the level of Director of Vice President, so even if you were a 'manager' you still would not be eligible to a higher minimum severance payment. The level of severance benefits communicated to you on May 21, 2002 is appropriate.

(Complaint, Exh. E.)

On August 26, 2002, Mr. Foley filed an appeal at the Appeals Committee of the Plan Administrator. (Complaint, Exh. F.) Mr. Foley described the Plan Administrator's decision as "wholly arbitrary" and also claimed that it was "discriminatory" because two

4

other former Astral Point employees to whom he compared himself -- Dan Micelli and Fred Parenteau -- had received the 26-week benefit level.

Alcatel's Administration Committee ("Committee") undertook a review of Mr. Foley's appeal at a December 9, 2002, meeting. Brenda Mills, senior director, corporate benefits, was tasked with investigating and summarizing Mr. Foley's claim and presented such a summary to the Committee. (See Affidavit of Brenda Mills, which is incorporated by reference as if fully set forth herein ("Mills Aff."), ¶¶2-3.) Ms. Mills determined that Mr. Foley was classified in Alcatel's job classification system as an "account director," a non-management sales position and that, as such, he was not entitled to the 26-week severance payment. (Mills Aff., ¶5.) Ms. Mills also investigated the severance paid to Mr. Parenteau and Mr. Micelli and determined that each had received the 26-week level severance based on their titles in Alcatel's job classification system, though it was determined that Parenteau had received the 26-week severance payment apparently in error because his title had never been changed to reflect that he was no longer in a management position at the time of Alcatel's acquisition of Astral Point. (Mills Aff., ¶5.) Ms. Mills further reviewed and summarized for the Committee the correspondence from Mr. Foley on the one hand and Mr. Todd and Ms. Liptak on the other. (Mills Aff., ¶3.)

The administrative record of Mr. Foley's claim before the Committee, therefore, was the Severance Plan and SPD, the severance statement to Mr. Foley, various internal correspondence, correspondence with Mr. Foley, and the meeting agenda and summary of his claim made by Ms. Mills. Mills Aff., ¶¶ 3; 8.

On December 23, 2002, on behalf of the Committee, Ms. Mills sent Mr. Foley a letter denying his appeal and attaching a "Sales Level Chart" that describes the

classifications used by Alcatel for its sales professionals. (Complaint, Exh. G.) This letter stated:

> A Sales Director is a sales position with minimal managerial authority and responsibilities. These job characteristics, coupled with the level of compensation for the position of Sales Director, place it at the level of an exempt individual contributor as opposed to a management position. This placement is reflected in the enclosed copy of the Job Level System. Further, while your title contained the term, "Director," this fact does not serve to convert an otherwise non-management job into a management position. Indeed, as is evidence by the enclosed Job Level System, AUSA uses this term in the title of other non-management positions for business reasons and customer contacts. Whether a job that contains the term "director" is that of an individual contributor rather than a manager is identified in the Job Level System by the placement of that term. Specifically, under the Job Level System, placement of the term "Director" or "Manager" or "VP" at the beginning of a job title is classified as management. The inclusion of these same terms at the end of a job title is used to classify individual contributors. Thus, the fact that your position uses the term "Director" at the end of your title of Sales Director, coupled with the non-management nature of your activities and your level of compensation, justifies the treatment of your job as a non-director under the Plan. Indeed, the AUSA Job Level System is routinely used for purposes of classifying positions under the Plan and employees with job positions and titles similar to you have been treated the same way (i.e. given benefits based on the status of a non-director position).
>
> …………..
>
> In your letter you also alleged that the decision on who receives the Minimum Severance Payment for Director is discriminatory in that Fred Parenteau (Director of N.E. Sales) and Dan Micelli (Director of Major Accounts) received Severance Payment of 26 weeks due to their Director status. We have investigated these situations, and find nothing to suggest that you should be paid as a Director.

(Id.)

Mr. Foley filed his Complaint in this Court on or about September 30, 2004, and discovery ensued. Plaintiff proceeded to propound 43 voluminous document requests, including numerous requests for documents, including personnel files, relating to other employees. See, e.g., Requests 20, 22, 23, 24, 29, 38, 39, 40, and 41. He also requested

sensitive business information, including financial information, that had absolutely nothing to do with his ERISA benefits. See, e.g., Requests 14, 15, 19, 21, 26, 28, 32, 42 and 43. It was clear that Mr. Foley was on a "fishing expedition" to cause the company to incur more costs than the $45,000 amount in controversy here. The Company's objections are appended to Mr. Foley's Motion to Compel as Exhibit C. Alcatel's objections include the objections that Mr. Foley is seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, that he was seeking to unduly burden Alcatel and that he was seeking inspection and copying of documents that contained confidential information, trade secrets or personal information regarding individuals other than Mr. Foley. Alcatel proposed a Stipulated Protective Order that Mr. Foley has refused to sign.

Alcatel has produced today to Mr. Foley's counsel his personnel file. The administrative record has also been submitted to this Court attached to the Affidavit of Ms. Mills or attached to the Complaint.

### III. LEGAL ARGUMENT

#### A. This Court Should Deny Mr. Foley's Motion To Compel And Instead Grant Alcatel's Motion That Discovery In This ERISA Action Be Limited To The Administrative Record.

In this case, Alcatel's Plan states that the Plan Administrator has the "power to implement, operate, and interpret this Plan" and also has "the responsibility and discretion to interpret and enforce all Plan provisions in its sole and absolute discretion." Plan, Section 5.1. "[W]here plan administrators are given discretionary authority to determine benefits eligibility or to construe the terms of a plan, an arbitrary and capricious standard of review will be applied." Lane v. Director of Employee Benefits,

7

Gannett Co., Inc., 253 F.Supp.2d 57, 62 (D. Mass. 2003) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 1, 115 (1989); Brigham v. Sun Life of Canada, 317 F.2d 72, 80 (1st Cir. 2003); Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997)). In Lane, the plan at issue similarly vested in the plan administrator "the authority to control and manage the operation of the Plan, [and] to construe and interpret the terms of the Plan." 253 F.Supp.2d at 62. With "this clear delegation of discretion," the court stated it was "obligated to apply the arbitrary and capricious standard of review." Id.

In an ERISA case where the arbitrary and capricious standard of review applies, the district court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002). Although there is no "ironclad rule against new evidence," "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Liston, 330 F.3d at 23.

In this case, Alcatel has presented the Affidavit of Brenda Mills who responded to Mr. Foley on behalf of Alcatel's administration committee. The "record" in this case consists simply of the Plan and its summary, the severance statement to Mr. Foley, various internal correspondence, the letters back and forth between Alcatel and Mr. Foley which included a chart summarizing Alcatel's job classification plan in sales, the Committee agenda meeting and minutes and Ms. Mills' summary of Mr. Foley's claim for the Committee. Mills Aff., ¶9.

Moreover, Mr. Foley's assertion that his "discrimination" claim warrants review beyond the administrative record is simply false because as set forth in Alcatel's summary judgment papers also filed today, Mr. Foley misconstrues the "discrimination" provisions of ERISA. ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ⋯ or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan." 29 U.S.C. § 1140. To establish a *prima facie* discrimination case, Mr. Foley must show that he "(1) belongs to the protected class; (2) was qualified for the position involved; and (3) was discharged or denied employment under circumstances that provide some basis for believing that prohibited intent existed." Feldman v. American Memorial Life Ins. Co., 196 F.3d 783, 792 (7th Cir. 1999). Mr. Foley has not brought a claim under §1140. Rather, his claim of "discrimination" is based simply on the fact that two other former Astral Point employees received the 26-week severance package when he did not.

Because the Plan Administration Committee did consider this claim by Mr. Foley -- and in fact, determined that Mr. Parenteau received benefits in error because his job was not correctly classified -- Alcatel has provided the meeting minutes and summary of Mr. Foley's claim wherein the Administrator considered Mr. Parenteau's and Mr. Micelli's status. In addition, attached to Ms. Liptak's affidavit is a chart that demonstrates how Mr. Micelli, Mr. Parenteau and Mr. Foley were classified in Alcatel's job classification system and printouts from human resources software, Cyborg, which show Mr. Micelli and Mr. Parenteau were classified as "director sales" as opposed to Mr.

9

Foley's lower level of "account director." (Liptak Aff., Exh. B.) Finally, to the extent that Mr. Foley believes that those employees who have been classified as "account directors" received enhanced severance benefits when he did not, attached to Ms. Liptak's affidavit is a chart (with names redacted) which shows that Alcatel consistently has given the lower level severance benefits to the 66 account directors it notified of termination between January 1, 2002, and January 5, 2005, and the minimum 26-week level severance to the 16 directors of sales or sales support terminated in that time frame. (Liptak Aff., Exh. D.)

In Liston, the plaintiff complained that "officers similarly situated got the benefits that Liston seeks and that she was denied an opportunity for discovery to show that this was so. Both the administrator and the court refused to allow discovery into how others were treated." 330 F.3d at 25. The First Circuit agreed with the magistrate judge who denied her request for discovery, ruling:

> Comparison of the files of others who received or were denied benefits invites an open-ended and probably hopeless attempt to compare disparate situations – whether impressionistically or by drawing up formulas purporting to explain the outcomes. The search through other records would have to be exhaustive; it would be only the predicate to further dispute about the significance of the information; and probably it would not be conclusive. Every administrative denial would be occasion for a vast and expensive inquiry into what judges sometimes call 'collateral issues.'

Id. at 26 (internal citation omitted). Moreover, as the First Circuit found, allowing discovery in such a situation "would be at odds with the concerns about efficient administration that underlie the ERISA statute itself." Id.

Finally, as a practical matter, the Court should deny Mr. Foley's Motion to Compel if it determines, as asserted in Alcatel's Summary Judgment papers filed today,

that Mr. Foley's claim is barred because he failed to comply with Alcatel's internal claim procedures. Under Article 5.4 of the Plan, compliance with internal claims procedures is a mandatory precondition to filing suit in this Court. (Complaint, Exh. A, the Plan, Art. 5.4.)

> B. This Court Should Deny Mr. Foley's Motion to Compel Based on the Objections Stated in Alcatel's Responses and Objections to Plaintiff's <u>Discovery Requests.</u>

Alcatel asserted objections to the Plaintiff's discovery requests in Defendant's Responses to Plaintiff's First Request for Production of Documents and in Defendant's Responses to Plaintiff's First Set of Interrogatories ("Alcatel's Objections to Discovery"). (Motion to Compel, Exh. C.) Alcatel hereby reasserts the objections to the various discovery requests. For the reasons stated in Alcatel's Objections to Discovery, Plaintiff's discovery requests are over broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and otherwise seek production of confidential information (including personal information of other employees and competitively sensitive information). Alcatel's efforts to reach a reasonable compromise on the substantive objections and on adequate confidentiality protections have been met with stiff resistance and have thus far been futile. Plaintiff's Motion to Compel should be denied. If any additional documents are ordered to be produced, Alcatel seeks entry of an appropriate protective order to protect not only Alcatel's rights, but also the rights to privacy of the people that are the subject of the Plaintiff's requests

## IV. <u>CONCLUSION</u>

Because the law so clearly requires that this Court's review be limited to the administrative record before the Plan administrator, Mr. Foley respectfully requests that this Court deny his motion to compel the production of documents, and further order that

discovery be limited to the administrative record.[1] Moreover, Alcatel reasserts all of its objections to the various discovery requests and for the reasons stated in its responses to the specific requests, moves the Court to deny Plaintiff's Motion to Compel.

### REQUEST FOR ORAL ARGUMENT

Alcatel respectfully requests that the Court schedule an oral argument on Alcatel's opposition and cross-motion.

ALCATEL USA, INC.

By its attorneys,

/s/ Jill Brenner Meixel
T. Christopher Donnelly (BBO# 129930)
Karen A. Pickett (BBO #633801)
Jill Brenner Meixel (BBO# 652501)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880


Sharan Goolsby
Corporate Counsel
Alcatel USA, Inc.
3400 W. Plano Parkway
Mailstop 009
Plano, TX  75075


DATED: September 16, 2005

---

[1] If the Court declines to limit discovery to the administrative record, the Court should enter the Protective Order proposed by Alcatel (attached as Exhibit B to Mr. Foley's memorandum in support of his motion to compel.)

12

## LOCAL RULE 37.1 CERTIFICATION

I hereby certify that on September 16, 2005, I conferred by telephone with John Burke, counsel for William Foley, and attempted in good faith to resolve or narrow the issue presented by this Cross-Motion.

/s/ T. Christopher Donnelly