UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILLIAM FOLEY,                    )
                                  )
            Plaintiff,            )
                                  )
V.                                )        Civil Action No. 04- 12126 EFH
                                  )
ALCATEL USA, INC.,                )
                                  )
            Defendant.            )

**DEFENDANT ALCATEL USA, INC.'S  STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Local Rule 56.1, defendant Alcatel USA, Inc. submits this Statement

of Material Facts As To Which There Is No Genuine Issue To Be Tried.

1.      The plaintiff William Foley ("Mr. Foley") began working for Astral Point

Communication ("Astral Point") in September 2000 as a "sales director." (Complaint,

¶5).

2.      In April 2002, Astral Point was acquired by Alcatel.  (Complaint, ¶6).

After Alcatel's acquisition of Astral Point, Alcatel made a business decision to lay off

certain employees, including Mr. Foley. (See Affidavit of Julie Liptak, which is

incorporated by reference as if set forth fully herein ("Liptak Aff.)," ¶4).

3.      On May 21, 2002, Alcatel issued a "Severance Statement" to Mr. Foley

which notified him that his salary and all regular benefits would continue for nine weeks

from that date (i.e., until July 22, 2002).  (Complaint, Exh. B.)  .  It also notified him that

he was eligible to receive 1.5 weeks of severance pay if he returned the enclosed

Confidential Severance Agreement and General Release("Release") by July 4, 2002. (Complaint, Exh. B.)

4.     Included with the severance statement was a summary plan description ("Summary") of Alcatel's Severance Benefit Plan ("Plan"). (Liptak Aff., ¶8l see also Complaint, Exh. A (containing a copy of both the Plan and the SPD).)

5.     The Plan "does not establish a legal obligation for the Employer to pay any severance benefits, and the Employer reserves the prerogative to discontinue offering severance benefits or to pay a lesser amount of severance benefits than set forth in this Plan document." (Complaint, Exh. A, the Plan, Art. 1.)

6.     The Plan states that an eligible employee who qualifies for severance benefits under the plan is entitled to receive nine (9) weeks of regular base pay. (Complaint, Exh. A, the Plan, Art. 4.1.)

7.     Under Article 4.2, an eligible employee who signs and returns the Release further is entitled to additional severance benefits. (Complaint, Exh. A, the Plan, Art. 4.2.)

8.     The "minimum severance payment for non-director/VP" is 1.5 weeks of regular base pay (the amount offered to Mr. Foley for his 0-1 years of service at Alcatel). Id.

9.     The minimum severance payment for "employees with the job level of director, senior director or AVP" on the other hand is 26 weeks of regular base pay.  Id.

10.    The Plan does not define the terms "non-director/VP" or "director, senior director or AVP," but under Article 5.1 the Plan Administrator:

Will have the power to implement, operate and interpret this Plan and to

2

take such other action as the Plan Administrator deems equitable and consistent with the purpose of the Plan in the particular circumstances. Although the Plan Administrator may not change any part of the Plan, the *Plan Administrator does have the responsibility and discretion to interpret and enforce all Plan provisions in its sole and absolute discretion.*

(Complaint, Exh. A, the Plan, Art. 5.1.)  (Emphasis added.)

11.    The Plan further sets forth internal claims procedure. Under Section 5.3:

Any Employee covered by this Plan who believes he or she is entitled to benefits under this Plan but who has not been advised of such benefit or who believes that the calculation of the benefit is in error should file a claim with the Plan Administrator. The claim should be filed within thirty (30) days of the date on which the Employee had learned of the scheduled termination of the amount of the benefit to be paid or not paid under this plan.

The Employee should submit a signed and dated claim in writing that briefly explains the basis for the claim. The claim must be sent by certified mail or presented in person to the Plan Administrator. If the claim is presented in person to the Plan Administrator then the Plan Administrator must give the Employee written acknowledgement of receipt.

(Complaint, Exh. A, the Plan, Art. 5.3.)

12.    Under Section 5.4 of the Plan: "Compliance with the internal claims procedures set forth in Section 5.3 and Section 5.4 is a mandatory precondition to filing an action for severance benefits in state or federal court." (Complaint, Exh. A, the Plan, Art. 5.4.)

13.    After Mr. Foley received his Severance Statement, he contacted Julie Liptak, Alcatel's Vice President of Human Resources, by telephone, and stated that he believed he was entitled to the minimum 26-week severance pay, and was informed by Ms. Liptak that the 1.5 week additional severance pay was appropriate. (Liptak Aff., ¶9).

14.    Ms. Liptak sent a letter to Mr. Foley on June 25, 2002, reiterating that he

3

was not entitled to a director-level severance package. (Complaint, Exh. C.)

15.    Mr. Foley filed a written claim disputing his severance benefits on July 17, 2002, which stated that he should have received "directors severance" based on his position as sales director and "the fact that two other sales directors from Astral Point performing the same sales role and duties as me received the 26 week director's severance." (Complaint, Exh. C.)

16.    Mr. Foley's July 17, 2002 letter was the first claim he submitted in writing to the Plan Administrator. (Liptak Aff., ¶10; Affidavit of Brenda Mills, which is incorporated by reference as if set forth fully herein ("Mills Aff.), ¶4.)

17.    Mr. Foley did not submit a written claim to the Plan Administrator within the 30 days required under § 5.3 of the Plan. (Complaint, Exh. A, the Plan, Art. 5.3.)

18.    Compliance with § 5.3 of the Plan is a mandatory precondition under the Plan to filing a lawsuit in state or federal court. (Complaint, Exh. A, the Plan, Art. 5.4.)

19.    On August 9, 2002, Alcatel's Director, Corporate Benefits, Toby Todd responded on behalf of the Plan Administrator. (Mills Aff., ¶4). Mr. Todd's letter (Complaint, Exh. E) informs Mr. Foley again:

> You were employed in a sales position with a job title of "Sales Director." However, your job was not that of a Director. Your job level, as classified by the Alcatel Job level system, was an exempt individual contributor. The distinction between individual contributor and manager is the placement of 'Director' or 'Manager'. Director, Manager or VP at the beginning of the title classifies you as a member of management. These same titles when placed at the end of the title classify you as an individual contributor. For business reasons and customer contacts, it is important to include these distinctions in the title, without the management responsibility. This is a common practice in other companies.
>
> In addition, there are management positions which do not rise to the level of Director of Vice President, so even if you were a 'manager' you still would not be eligible to a higher minimum severance payment. The level of severance benefits communicated to you on May 21, 2002 is appropriate.

4

20.    On August 26, 2002, Mr. Foley filed an appeal at the Appeals Committee of the Plan Administrator (Complaint, Exh. F). Mr. Foley described the Plan Administrator's decision as "wholly arbitrary" and also claimed that it was "discriminatory" because two other former Astral Point employees to whom he compared himself - - Dan Micelli and Fred Parenteau - - had received the 26-week benefit level. Id.

21.    Alcatel's Administration Committee ("Committee") undertook a review of Mr. Foley's appeal in a December 9, 2002, meeting. Brenda Mills, senior director, corporate benefits, was tasked with investigating and summarizing Mr. Foley's claim and presented such a summary to the Committee. (Mills Aff., ¶¶2-3).

22.    Ms. Mills determined that Mr. Foley was classified in Alcatel's job classification system as an "account director," a non-management sales position and, as such he was not entitled to the 26-week severance payment . (Mills Aff., ¶5).

23.    Ms. Mills also investigated the severance paid to Mr. Parenteau and Mr. Micelli and determined that each had received the 26-week level severance based on their titles in Alcatel's job classification system, though it was determined that Parenteau had received the 26-week severance payment in error because his title had never been changed to reflect that he was no longer in a management position at the time of Alcatel's acquisition of Astral Point. (Mills Aff., ¶5).

24.    Ms. Mills further reviewed and summarized for the committee the correspondence from Mr. Foley on the one hand and Mr. Todd and Ms. Liptak on the other. (Mills Aff., ¶3).

25.    The administrative record of Mr. Foley's claim before the Committee was

the Severance Plan and Summary, the severance statement to Mr. Foley, various internal correspondence, correspondence with Mr. Foley, and the meeting agenda and summary of his claim created by Ms. Mills.  (Mills Aff., ¶¶3;9).

26.    On December 23, 2002, Ms. Mills, on behalf of the Committee, sent to Mr. Foley a letter denying his appeal and attaching a "Sales Level Chart" that describes the classifications used by Alcatel for its sales professionals.  (Complaint, Exh. G).  This letter stated:

> A Sales Director is a sales position with minimal managerial authority and responsibilities.  These job characteristics, coupled with the level of compensation for the position of Sales Director, place it at the level of an exempt individual contributor as opposed to a management position.  This placement is reflected in the enclosed copy of the Job Level System. Further, while your title contained the term, "Director," this fact does not serve to convert an otherwise non-management job into a management position. Indeed, as is evidence by the enclosed Job Level System, AUSA uses this term in the title of other non-management positions for business reasons and customer contacts.  Whether a job that contains the term "director" is that of an individual contributor rather than a manager is identified in the Job Level System by the placement of that term. Specifically, under the Job Level System, placement of the term "Director" or "Manager" or "VP" at the beginning of a job title is classified as management. The inclusion of these same terms at the end of a job title is used to classify individual contributors.  Thus, the fact that your position uses the term "Director" at the end of your title of Sales Director, coupled with the non-management nature of your activities and your level of compensation, justifies the treatment of your job as a non-director under the Plan. Indeed, the AUSA Job Level System is routinely used for purposes of classifying positions under the Plan and employees with job positions and titles similar to you have been treated the same way (i.e. given benefits based on the status of a non-director position).

> . . . . . . . . . . . . . .

> In your letter you also alleged that the decision on who receives the Minimum Severance Payment for Director is discriminatory in that Fred Parenteau (Director of N.E. Sales) and Dan Micelli (Director of Major Accounts) received Severance Payment of 26 weeks due to their Director status. We have investigated these situations, and find nothing to suggest that you should be paid as a Director.

6

Id.

27.    Mr. Foley was eligible for the same level of severance as all other employees classified as account directors at Alcatel. (Liptak Aff, ¶12 and Exh. D thereto).

28.    Mr. Foley did not serve in a managerial or supervisory role at any time during his employment at Alcatel. (Plaintiff's Response to Defendant's Request for Admission #3, appended hereto as Exhibit A).

29.    Mr. Foley did not director or supervise any other employees during his employment at Alcatel. (Plaintiff's Response to Defendants Request for Admission #s 5 and 7).

30.    As a condition to receiving severance payments beyond the nine weeks of regular base pay, Mr. Foley was required to return to Alcatel the Release attached to his Severance Statement. (Complaint, Exh. A, the Plan, Art. 4.2.)

31.    Mr. Foley never signed and returned the Release attached to his Severance Statement.

32.    There was no "discrimination" at Alcatel against Mr. Foley. He would have received all of the severance benefits to which he was entitled if he had timely returned the Release. No Alcatel "account director" who was notified of termination between January 1, 2002, and January 5, 2005, received director-level severance payments from Alcatel. In that time frame, there were 66 account directors and senior account directors who were eligible for severance and not one of those people received a minimum 26 week director-level severance payment. Only the 16 employees who were

directors of sales or sales support qualified for the minimum 26 week severance payment.

(Liptak Aff., ¶12 and Exh. D thereto).

ALCATEL USA, INC.

By its attorneys,

/s/ Jill Brenner Meixel
T. Christopher Donnelly (BBO# 129930)
Karen A. Pickett (BBO #633801)
Jill Brenner Meixel (BBO #652501)
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, Massachusetts 02108
(617) 720-2880

Sharan Goolsby
Corporate Counsel
Alcatel USA, Inc.
3400 W. Plano Parkway
Mailstop 009
Plano, TX  75075

DATED: September 16, 2005